IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STANLEY A. PUGH,                   :   CIVIL ACTION
                                   :   NO. 09-1572
    Plaintiff,                 :
                                   :
                                   :
    v.                         :
                                   :
CHESTER DOWNS AND MARINA, LLC,:
    et al.,                    :
                                   :
    Defendants.                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              July 27, 2009

       There are two motions pending before the Court.  First,
Defendants Chester Downs and Marina, LLC ("Chester Downs") and
Dennis Dougherty ("Dougherty") filed a motion to dismiss
Plaintiff's second amended complaint (doc. no. 22), arguing that
Plaintiff failed to state: (1) federal claims under 42 U.S.C. §
1983, alleging constitutional violations [Counts I - IV]; and (2)
a state law claim for malicious prosecution [Count VI].  For the
reasons that follow, Defendants' motion to dismiss will be
granted in part and denied in part.  It will be granted to the
extent that Defendants seek to dismiss Plaintiff's Section 1983
claims [Counts I - IV] against Defendant Dougherty.  It will be
denied to the extent that Defendants seek to dismiss Plaintiff's
state law claim for malicious prosecution [Count VI] against
Defendant Dougherty.

1

Second, Defendant Gary Onick ("Onick") filed a motion to dismiss Plaintiff's second amended complaint (doc. no. 18), arguing that Plaintiff failed to state a Section 1983 conspiracy claim against Defendant Onick.  For the reasons that follow, Defendant's motion to dismiss will be granted.

I.  BACKGROUND

Plaintiff Stanley A. Pugh filed suit against Chester Downs, Dougherty, and Onick, (collectively "Defendants"), alleging the following constitutional violations pursuant to 42 U.S.C. § 1983: conspiracy, excessive force, malicious prosecution, and false arrest/ imprisonment.  In addition, Plaintiff alleges Pennsylvania state law claims for assault and battery, false arrest/ imprisonment, malicious prosecution and intentional infliction of emotional distress, as applied to Defendant Dougherty.  Finally, Plaintiff alleges a claim for respondeat superior, as applied to Defendant Chester Downs.

Plaintiff is an adult citizen of Philadelphia, Pennsylvania.  Defendant Chester Downs is a limited liability corporation, existing under the laws of Pennsylvania.  Defendant Chester Downs owns and operates Harrah's Chester Casino and Racetrack.  Defendant Dougherty is an adult individual, employed as the security shift manager at Harrah's Chester Casino. Defendant Onick is a Pennsylvania State trooper and pursuant to

-2-

an agreement between Defendant Chester Downs and Pennsylvania State Police, Defendant Onick was assigned to work at Harrah's Chester Casino.[1]

According to Plaintiff, the facts supporting these allegations are as follows.  On May 10, 2007, Plaintiff and his fiancée, Adrienne Cropp, were playing the slot machines at Harrah's Chester Casino when Defendant Dougherty approached Plaintiff and asked him to leave the casino.  (Pl.'s 2d. amd. compl., ¶¶ 7, 12).  Plaintiff inquired as to why he was forced to leave; Defendant Dougherty did not provide a response.  (Id. at ¶¶ 12, 13).  Defendants Dougherty and Onick escorted Plaintiff out of the casino and "began, in concert, to physically assault and batter plaintiff, taking him to the ground and spraying him with mace." (Id. at ¶ 15).

Plaintiff was taken to a holding room where Defendant Onick arrested him and then "severely assaulted and battered plaintiff, without provocation . . . causing numerous injuries about his face, ears, head, body, shoulder, and limbs."  (Id. at ¶ 17).  Plaintiff was charged with terroristic threats with

_____

[1]      Specifically, Defendant Onick was "assigned an office and/or work area on the premises of Harrah's Chester Casino and Racetrack for the purposes of working with the casino's in-house security personnel."  (Pl.'s 2d. amd. compl., ¶ 23).  "In-house security personnel worked with the assigned Pennsylvania State Trooper to enforce security at the casino, to effectuate arrests of patrons on casino grounds and to assist in prosecuting those arrests."  (Id. at ¶ 24).

intent to terrorize, simple assault and resisting arrest.  (<u>Id.</u> at ¶ 17).  Plaintiff was released twelve hours later, after bail was posted.  (<u>Id.</u> at ¶ 18).  Plaintiff was acquitted on all charges at jury trial.  (<u>Id.</u> at ¶ 21).

II.  MOTIONS TO DISMISS (Doc. nos. 22 and 18)

    A.  <u>Legal Standard</u>

       Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  <u>DeBenedictis v. Merrill Lynch & Co., Inc.</u>, 492 F.3d 209, 216 (3d Cir. 2007) (quotation omitted).  The Court need not, however, "credit either bald assertions or legal conclusions in a complaint when deciding a motion to dismiss."  <u>Id.</u> (quotation omitted).  The "'[f]actual allegations must be enough to raise the right to relief above the speculative level.'"  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 & n.3 (2007)).

       The United States Supreme Court recently elaborated on

-4-

the plausibility standard enunciated in <u>Twombly</u>.  <u>See Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-52 (2009) (applying <u>Twombly</u> to all civil actions).  <u>Iqbal</u> specifically commented on the "[t]wo working principles" from <u>Twobly</u>.  129 S. Ct. at 1949.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "shown" – "that the pleader is entitled to relief."

<u>Id.</u> at 1949-50 (citations omitted).

###### B.  <u>Defendants Chester Downs and Dougherty</u>

Defendants Chester Downs and Dougherty argue that Plaintiff failed to state Section 1983 claims [Counts I - IV], against Defendant Dougherty, because Plaintiff failed to allege that Defendant Dougherty acted under the color of state law.[2]

---

[2]     In addition, Defendants Chester Downs and Dougherty argue that Plaintiff failed to state a Pennsylvania state law claim for malicious prosecution [Count IV].  During the July 20, 2009 hearing on Defendants' Motion to Dismiss, Defendants did not address this argument.

In order to state a claim for malicious criminal prosecution under Pennsylvania law, Plaintiff must allege the

Plaintiff argues that he properly pleaded the Section 1983 claims against Defendant Dougherty because he alleged that Defendant Dougherty "acted in concert" with Pennsylvania State trooper, Defendant Onick.

To establish a Section 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation [violation of a right] was committed by a person acting under the color of state law." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Here, Defendant Dougherty is a

---

following: (1) defendant initiated a criminal proceeding; (2) that ended in the plaintiff's favor; (3) without probable cause; and (4) the defendant acted maliciously or for a purpose other than bringing the defendant to justice.  McKibben v. Schmotzer, 700 A.2d 484, 492 (Pa. Super. Ct. 1997).  Actual malice is "ill will or spite, lack of belief by the actor himself in the propriety of the prosecution, or use of a prosecution for an extraneous improper use."  Schmoltze v. County of Berks, No. 99-1069, 2000 U.S. Dist. LEXIS 503, at *17 (E.D. Pa. Jan. 13, 2000) (citing Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988)).

In support of this claim, Plaintiff pleaded the following: "Defendant Dougherty provided false information to the prosecuting attorney to cover up his own illegal conduct towards plaintiff and testified in conformity with that false information at plaintiff's criminal trial.  This was done not for the purpose of bringing plaintiff to justice but to retaliate against him for openly questioning Dougherty's basis for ordering plaintiff and his fiancée to leave the Casino premises."  (Pl.'s 2d. amd. compl., ¶ 57).

Under the liberal notice pleading practice, these factual allegations are adequate to allege "malicious purpose" or "ill will" to support a malicious prosecution claim. Accordingly, Defendants' motion to dismiss on this ground will be denied.

private party, not a government entity, and therefore is only liable under Section 1983 if he is "fairly said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

Courts have found a private party "fairly said to be a state actor" under four tests. First, where "there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may fairly be treated as that of the state itself." ["close nexus test"]; Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (holding state responsible for private decision "only where it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State").[3] Second, where "the state has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." ["symbiotic relationship test"]; Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961) (holding privately owned restaurant's refusal to serve an African American customer constituted state action where

---

[3]     In Blum, nursing homes that discharged or transferred patients without due process where not state actors, despite: (1) the state requirement to complete state-devised forms concerning patients; (2) the state requirement to attempt to transfer patients to appropriate levels of care; (3) the state subjected fines for violations of regulations; and (4) the necessary state approval to secure payments of Medicaid benefits.  457 U.S. at 1008.

the restaurant leased space from a parking garage owned by state agency).  Third, where a private party is a "willful participant in joint action with the State or its agents."  ["joint action test"]; <u>Lugar</u>, 457 U.S. at 941 (1982).  Fourth, where the private party has been "delegated . . . a power 'traditionally exclusively reserved to the State.'"  ["public function test"]; <u>Terry v. Adams</u>, 345 U.S. 461, 468-470 (1953) (state action found where private actor administered election of public officials).[4]

In the state action inquiry, "more than one test may be relevant . . . the tests may overlap, and one or more prongs of one test may be irreconcilably inconsistent with the prong of another." <u>Onoufrious Spyros v. Kimball</u>, 813 F. Supp. 352, 357 (E.D Pa. 1993).  The test to be applied depends upon the circumstances of the case and the Supreme Court has counseled lower courts to investigate carefully the facts of each case. <u>Id.</u> (citing <u>Burton</u>, 365 U.S. at 722).

Here, Plaintiff proceeded under the "joint action" test to argue that Defendant Dougherty was a state actor.  Applying

---

[4]     The public function test is difficult to satisfy. "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149, 158 (1978). <u>See</u> <u>e.g.,</u> <u>Marsh v. Alabama</u>, 326 U.S. 501, 505-09 (1946) (operation of a company owned town is traditional government function); <u>Evans v. Newton</u>, 382 U.S. 296, 298-302 (1966) (management of a city party is a traditional government function).

this test, courts examine whether state officials and private parties "acted in concert" in effectuating a deprivation of constitutional rights.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970) (finding state action where private party and state official conspired to violate plaintiff's equal protection rights); Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989) (finding no state action where state official used independent judgment, rather than the judgment of a private party, in issuing citations to protesters violating preliminary injunction); Howerton v. Gabrica, 708 F.2d 380, 385 (9th Cir. 1983) (finding state action based on police intervention at "every step" of eviction).

        Plaintiff offers various authorities to support state action under the "joint action" test, all of which are either distinguishable on the facts or inapplicable to this case. First, Plaintiff cites D'Amario v. Providence Civic Ctr. Authority, 783 F.2d 1 (1st Cir. 1986), where the First Circuit, applying the "close nexus" test, held that private employees enforcing a "no camera" rule in the civic center were state actors because the employees were under control and direction of the civic center, despite the fact a private entity paid the employees.  D'Amario is factually distinguishable.  Unlike the state's control over the private employees in D'Amario, here, as

Plaintiff conceded during argument on Defendants' motion to dismiss, there is no allegation that Defendant Onick, nor the Pennsylvania State Police, exercised any control over Defendant Dougherty to detain or remove casino patrons.

Second, Plaintiff cites <u>Jones v. Gutschenritter</u>, 909 F.2d 1208 (8th Cir. 1990), where the Eighth Circuit held that an issue of material fact existed as to whether a police officer's action caused the injury to plaintiff, or if the injury was caused by a private actor (not named in the lawsuit).  Unlike the instant case, the plaintiff in <u>Jones</u> sued a police officer, not a private citizen, and the officer argued that although he was a state actor, the plaintiff's alleged injury was not a result of the state action.  <u>Id.</u> at 1212.  This is an entirely separate inquiry from here where Plaintiff contends that a private person acted in concert with a state actor.

Third, Plaintiff cites <u>Murray v. Wal-Mart</u>, 874 F.2d 555 (8th Cir. 1989), where the Eighth Circuit, employing the "joint action test," held that a private party (Wal-Mart security guard) acted in concert with state police where the private party maintained a practice of detaining suspected shoplifters and working with the police department to prosecute shoplifters. Pivotal in the state action determination, the Wal-Mart security guard had a close relationship with the prosecuting attorney and

due to this relationship, the prosecuting attorney relied upon the opinion of the security guard in whether to prosecute the case. Id. at 559. Unlike the state official's reliance on the private party in Murray, here, there is no indication that Defendant Onick relied upon the opinion of Defendant Dougherty in determining whether to approach or arrest a casino patron.[5]

Finally, Plaintiff cites Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442 (10th Cir. 1995), where the Tenth Circuit held that security guards employed by a University to provide crowd management control did not act in concert with the University. Id. Despite the fact that the University gave the security guards broad discretion over security, and the security guards conducted pat-down searches of all concert goers, the security guards were not state actors. Id. at 1454. Notably, although Plaintiff cites this case, state action was not in fact established on the facts in Gallagher and thus, this case does

---

[5]     In addition, the Court notes that Murray, a shoplifting detention/ arrest case decided in the Eighth Circuit, did not employ the Cruz v. Donnelly state action analysis, as required in the Third Circuit. 727 F.2d 79, 81 (3d Cir. 1984). The Third Circuit applies Cruz in the shoplifting context to determine whether a private party's participation in an arrest rises to the level of state action. Id. Cruz directs the court to identify whether a pre-arranged plan existed requiring the state official to arrest patrons on the command of a private party. Murray did not apply a similar test. Because the Eighth Circuit does not employ the Cruz analysis, or a similar inquiry, Murray is further distinguishable.

not support Plaintiff's position.

More on point than the authorities cited by Plaintiff is the Third Circuit's application of the "joint action" test, albeit in a different factual context, in <u>Cruz v. Donnelly</u>, 727 F.2d 79 (3d Cir. 1984). Although <u>Cruz</u> was developed in the shoplifting context, at least one case has applied <u>Cruz</u> outside of that factual confine.[6] The teachings of <u>Cruz</u>, particularly in light of its reliance the United States Supreme Court's decision in <u>Lugar</u>, are applicable here.[7]

In <u>Cruz</u>, store employees became suspicious of a shopper and contacted police who, upon "order and command" of the store

---

[6]    See <u>Collins v. Christie</u>, No. 06-4702, 2007 U.S. Dist. LEXIS 61579, at *10-11 (E.D. Pa. Aug. 22, 2007) (holding plaintiff alleging Section 1983 claims against a physician and private hospital failed to state a claim where he failed to allege his arrest "resulted from 'concerted action tantamount to substituting the judgment of a private party for that of the police or allowing the private party to exercise state power'") (citing <u>Alexis v. McDonald's Rest.</u>, 67 F.3d 341, 351-52 (1st Cir. 1995)).

[7]    See also <u>Allen v. Weis Markets, Inc.</u>, No. 07-1516, 2009 U.S. Dist. LEXIS 38431, at *4-5 (M.D. Pa. May 6, 2009) (holding plaintiff alleging excessive force under Section 1983 by private security guard failed to state a claim where he did not allege that the security guard acted pursuant to an agreement with municipal authorities); <u>Smith v. Super Fresh Market</u>, No. 86-5284, 1986 U.S. Dist. LEXIS 17454, at *3 (E.D. Pa. Nov. 21, 1986) (finding plaintiff alleging Section 1983 civil rights violations against a private business failed to state a claim where he failed to allege the existence of a pre-arranged plan to substitute the private party's judgment for that of the police).

employee, searched the shopper for stolen goods.  727 F.2d at 79.
When no goods were found on the shopper, the shopper filed a
Section 1983 action against the store employees and police
alleging unlawful detention and search.  Id.  The store employees
argued that the shopper could not state a Section 1983 claim
against the employees because the employees were not state
actors.  Id.  The Third Circuit held that in the absence of a
specific allegation of a plan between the store employees and
police, whereby "the police substituted the judgment of private
parties for their own official authority," the store employees
could not be deemed state actors.  Id. at 81.

        In reaching its decision, the Cruz Court relied upon
the United States Supreme Court's decision in Lugar.  457 U.S. at
942.  In Lugar, the Court held that a private individual who
sought prejudgment attachment of another's property, pursuant to
a state statute which allowed for attachment based on one party's
ex parte application, was a state actor.  Id.  Specifically,
under this statute, a private party's allegations that an
individual was disposing or may dispose of property in order to
defeat creditors, triggered an automatic requirement that the
County Sheriff execute prejudgment attachment of the individual's
property.  Id. at 924.  Because the County Sheriff did not use
his own judgment in determining whether to execute prejudgment

attachment against the individual, but rather acted upon the direction of the private party's ex parte petition, the private party was deemed a state actor. <u>Id.</u> at 942.

"<u>Lugar</u> teaches that at least when the state creates a system permitting private parties to substitute their judgment for that of a state official or body, a private actor's mere invocation of state power renders that party's conduct actionable under § 1983." <u>Cruz</u>, 727 F.2d at 82. Notably, <u>Cruz</u> arose in the context of an agreement between a state official and private party to replace the discretion of the state official with that of the private store owner, and <u>Lugar</u> arose in the context of a statute which vested discretion in a private party to initiate prejudgment attachment of another's property. Nonetheless, in both cases, the deciding inquiry was whether the state official surrendered the exercise of its official judgment to a private party, either pursuant to an agreement or statute, thus turning the private party into a state actor.

Applying the teachings of <u>Cruz</u> and <u>Lugar</u>, Plaintiff has failed to allege that the judgment of Defendant Onick was replaced by the judgment of Defendant Dougherty, or any member of the security staff. Rather, Plaintiff alleges a tenuous arrangement whereby Defendants Onick and Dougherty worked in concert to enforce security at the casino, albeit while working

-14-

under different titles and for separate employers.  Under the
guidance of <u>Lugar</u> and <u>Cruz</u>, Defendant Dougherty was not a state
actor because Plaintiff failed to allege a preexisting
arrangement whereby the discretionary judgment of Defendant Onick
employed in effectuating arrests of casino patrons would be
substituted with that of Defendant Dougherty.

Accordingly, because Plaintiff failed to establish that
Defendant Dougherty was a state actor, Plaintiff is unable to
state Section 1983 claims against Defendant Dougherty.
Defendants' motion to dismiss Plaintiff's second amended
complaint on this ground will be granted.

C.   <u>Defendant Onick</u>

Defendant Onick argues that Plaintiff failed to state a
Section 1983 conspiracy claim against Defendant Onick because he
failed to allege facts from which a conspiratorial agreement
between Defendants could be inferred.  In order to state a
conspiracy claim under Section 1983, a plaintiff must show that
two or more conspirators reached an agreement to deprive her of a
constitutional right under color of state law.  <u>Parkway Garage,</u>
<u>Inc. v. City of Philadelphia</u>, 5 F.3d 685, 700 (3d Cir. 1993).
The conspiracy must be made up of two or more state actors, or at
lease one state actor with a private party deemed to be a state
actor.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 185 (3d Cir. 1993).

-15-

The Section 1983 claim against Onick would be adequately stated if Plaintiff properly alleged that Defendants Onick and Dougherty, acting under the color of state law, reached an understanding to deny Plaintiff his rights under Section 1983. Kost, 1 F.3d at 185 (citing Adickes, 398 U.S. at 150). "Establishing the existence of this 'understanding,' however, is really nothing more than another way to show state action as required by § 1983 when a private party is alleged to have violated that statute." Id.  Because the Court has determined that Defendant Dougherty is not a state actor for the purposes of Section 1983 liability, he cannot be deemed to be a party to a Section 1983 conspiracy.[8]  Accordingly, Plaintiff cannot state a claim for Section 1983 conspiracy.

III.  STATUS OF REMAINING CLAIMS

The following claims remain after the Court's disposition of Defendants' Motions to Dismiss (doc. nos. 22 and 18): (1) Section 1983 claims, as to Defendant Onick, alleging false arrest/imprisonment, excessive force, and malicious

---

[8]   In the alternative, "just as there was a complete failure of proof on the nexus necessary to show state action in the context of [P]laintiff's § 1983 claim against [Dougherty], there is an analogous failure of proof on the understanding necessary to establish [Dougherty's] participation in a § 1983 conspiracy." Kost, 1 F.3d at 185.

-16-

prosecution [Counts II, III, and IV]; (2) Pennsylvania state law claims, as to Defendant Dougherty, alleging assault and battery, malicious prosecution, intentional infliction of emotional distress [Counts V, VI, VII]; and (3) Respondeat superior claim, as to Defendant Chester Downs [Count VIII].

An appropriate order follows.  A scheduling order governing the duration of the case, as to the remaining claims, will issue.