IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANLEY A. PUGH, | : | CIVIL ACTION |
| | : | NO. 09-1572 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHESTER DOWNS AND MARINA, LLC, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                JUNE 4, 2010

**I. INTRODUCTION**

Plaintiff Stanley A. Pugh ("Pugh" or "Plaintiff") filed suit against Chester Downs and Marina, LLC ("Chester Downs"), Dennis F. Dougherty ("Dougherty"), and New Jersey State Police Trooper Gary Onick ("Onick"), (collectively "Defendants"), alleging the following constitutional violations pursuant to 42 U.S.C. § 1983: conspiracy, excessive force, malicious prosecution, and false arrest/ imprisonment.  In addition, Plaintiff alleges Pennsylvania state law claims for assault and battery, false arrest/ imprisonment, malicious prosecution and intentional infliction of emotional distress, as applied to Defendant Dougherty.  Finally, Plaintiff alleges a claim for respondeat superior, as applied to Defendant Chester Downs.

1

Plaintiff is a citizen of Philadelphia, Pennsylvania. Defendant Chester Downs is a limited liability corporation, existing under the laws of Pennsylvania. Defendant Chester Downs owns and operates Harrah's Chester Casino and Racetrack. Defendant Dougherty is an individual, employed as the security shift manager at Harrah's Chester Casino. Defendant Onick is a Pennsylvania State trooper and, pursuant to an agreement between Defendant Chester Downs and Pennsylvania State Police, Defendant Onick was assigned to work at Harrah's Chester Casino.[1]

Before the Court is moving Defendants Chester Downs and Dougherty's motion for summary judgment.[2] For the reasons that follow, the motion for summary judgment will be granted in part and denied in part.

## II. BACKGROUND

According to Plaintiff, the facts supporting his allegations are as follows. On May 10, 2007, Plaintiff and his fiancée, Adrienne Cropp, were playing the slot machines at

---

[1] According to the complaint, Defendant Onick was "assigned an office and/or work area on the premises of Harrah's Chester Casino and Racetrack for the purposes of working with the casino's in-house security personnel." (Pl.'s 2d. amd. compl. at ¶ 23). "In-house security personnel worked with the assigned Pennsylvania State Trooper to enforce security at the casino, to effectuate arrests of patrons on casino grounds and to assist in prosecuting those arrests." (Id. at ¶ 24). Under what authority, whether statutory or otherwise, was Trooper Onick operating inside the casino, has not yet been addressed by the parties.

[2] Defendant Onick has not moved for summary judgment.

Harrah's Chester Casino when Defendant Dougherty approached Plaintiff and asked him to leave the casino. (Pl.'s 2d. amd. compl. at ¶¶ 7, 12). Plaintiff inquired as to why he was forced to leave and Defendant Dougherty did not respond. (Id. at ¶¶ 12, 13). Defendants Dougherty and Onick escorted Plaintiff out of the casino and "began, in concert, to physically assault and batter plaintiff, taking him to the ground and spraying him with mace." (Id. at ¶ 15).

Plaintiff was taken to a holding room where Defendant Onick arrested him and then "severely assaulted and battered plaintiff, without provocation . . . causing numerous injuries about his face, ears, head, body, shoulder, and limbs." (Id. at ¶ 17). Security cameras at the casino recorded (the "Video") at least part of the interactions among Plaintiff, Onick and Dougherty on the night of the incident. After the incident, Plaintiff was charged with terroristic threats with intent to terrorize, simple assault and resisting arrest. (Id. at ¶ 17). Plaintiff posted bail and was released twelve hours later. (Id. at ¶ 18). Later, Plaintiff was acquitted on all charges at jury trial. (Id. at ¶ 21).

Defendants filed a motion to dismiss. On July 27, 2009, the Court granted the motion in part and denied it in

part.[3]  The following claims remained after the Court's disposition of Defendants' motions to dismiss: (1) Section 1983 claims, as to Defendant Onick, alleging false arrest/imprisonment, excessive force, and malicious prosecution [Counts II, III, and IV]; (2) Pennsylvania state law claims, as to Defendant Dougherty, alleging assault and battery, malicious prosecution, intentional infliction of emotional distress [Counts V, VI, VII]; and (3) Respondeat superior claim, as to Defendant Chester Downs [Count VIII].

**III. LEGAL STANDARD**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that

---

[3] See Pugh v. Chester Downs and Marina, LLC, et al., 641 F. Supp. 2d 468 (E.D. Pa. 2009) (finding that because Plaintiff failed to establish that Defendant Dougherty was a state actor, Plaintiff was unable to state Section 1983 claims against Defendant Dougherty and could not state a claim for Section 1983 conspiracy).

4

fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Once the moving party has discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## IV. ANALYSIS

### 1. Battery Claim

Defendants Chester Downs and Dougherty argue that Plaintiff is not able to establish a prima facie cause of action against Dougherty for battery. Defendants argue that the Video "clearly" shows that Pugh was the initial aggressor. They contend that Pugh intended to make physical contact with

5

Dougherty and Dougherty fell to the ground with Pugh standing over him. Dougherty argues that the Video "does not show any physical assault and batter (i.e. Dougherty not punching or kicking plaintiff) of Dougherty. The video does show . . . plaintiff being taken to the ground but there can be no dispute from the video that Dougherty did not take plaintiff down." (Def.'s Mot. Summ. J. at unnumbered 4.)

The Supreme Court of Pennsylvania defines battery as "harmful or offensive contact." Dalrymple v. Brown, 701 A.2d 164, 170 (Pa. 1997). The elements of battery are harmful or offensive contact with a person resulting from an act intended to cause the plaintiff or a third person to suffer such contact. Id.

Defendants base their argument on a grainy, low-quality Video with no sound that purports to depict the incident on May 10, 2007. (Defs.' Ex. C, Video of May 10, 2007.) However, the Video is anything but "clear."[4] The Video shows Pugh being escorted out of the casino by Dougherty and Onick. There seems to be a heated verbal exchange and Onick grabs Pugh around his neck. As the parties walk quickly towards an exit near a gift shop, Dougherty appears to be holding Pugh's arm. Pugh is walking just a step in front of Dougherty and Onick. Pugh

---

[4] Accordingly, Plaintiff and Defendants describe the Video footage very differently. (See Def.'s Mot at unnumbered 5-6; Pl.'s Resp. at 6-10.)

6

appears to be forced, face first, into a glass wall of a casino gift shop.

At this point in the Video, it is unclear whether Pugh intentionally turns himself around to punch Onick and Dougherty or if Dougherty and Onick spin Pugh around themselves to handcuff him. There is a tussle and Dougherty seems to bring Pugh down with him, as Dougherty falls to the ground. At the same time, Onick grabs Pugh in a choke hold and sprays Pugh in the face with pepper spray. It is unclear if Dougherty is attempting to kick Pugh while Onick has Pugh in a choke hold. By this point, several other security officers have rushed to the scene, wrestled Pugh to the ground and are attempting to subdue and handcuff him. Dougherty then, while Pugh is lying prone on the ground, pushes the back of Pugh's head and forces Pugh's face into the ground. Afterwards, Pugh is handcuffed and Onick and Dougherty are shown leading him through the casino into the state police holding room, as three other security officers remain outside the room. The Video ends after Pugh, Onick and Dougherty enter the holding room, which does not have a surveillance camera.

Under these circumstances, summary judgment is not appropriate as to Plaintiff's battery claim.[5] There are several

---

[5] Accordingly, Plaintiff's respondeat superior claim against Defendant Chester Downs will also survive summary judgment.

7

genuine issues of material fact concerning the altercation between Pugh and Dougherty.  Most relevant to the battery claim, there is a genuine issue of material fact as to whether Dougherty contributed to bringing Pugh to the ground and assaulting him while he was being subdued on the casino floor.[6]

**2. Malicious Prosecution**

Defendants argue that Plaintiff is not able to establish the necessary elements of malicious prosecution under Pennsylvania law.

In order to establish a claim for malicious prosecution, a party must establish that the defendant "instituted proceedings" against the plaintiff: (1) without probable cause, (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff.  McKibben v. Schmotzer, 700 A.2d 484, 492 (Pa. Super. Ct. 1997).  In the instant case, there is no dispute that the third element has been established because the jury found Pugh not guilty of the criminal charges filed against him.  However, the parties dispute whether Dougherty instituted the proceedings against Pugh without probable cause and with malice.

To prove malice in this case, it must be shown that

---

[6] The parties dispute whether Dougherty, along with Onick, assaulted Pugh in the holding room where there was no surveillance camera.  The Court need not address this dispute, as it has already found there is a genuine issue of material fact as to whether Dougherty assaulted Pugh on the casino floor.

8

whatever information, if any, given to the prosecuting officer (Onick) was known by the giver (Dougherty) to be false. <u>Bradley v. Gen. Accident Ins. Co.</u>, 778 A.2d 707 (Pa. Super. Ct. 2001.)

The Court in <u>Bradley</u> elaborated:

> When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
>
> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

<u>Bradley</u>, 778 A.2d at 711 (quoting Restatement (Second) of Torts § 653 comment g).

Defendants argue that there is no evidence that Onick (as the charging officer) was provided with any information from Dougherty that was necessary for the arrest and prosecution of Pugh. They argue that the arrest was made by Onick solely at his own initiative and discretion, only after Pugh made a statement

9

and gesture towards Dougherty that was interpreted by Onick as being threatening.[7] Thus, it is moving Defendants' argument that Onick initiated the arrest and prosecution from his own observation and, therefore, there can be no state malicious prosecution claim against Dougherty. Moreover, Defendants argue that Plaintiff has not even claimed or provided evidence of Dougherty's malice related to the prosecution.

Contrarily, Plaintiff points to a police investigation report about the incident where Dougherty is identified as the "victim." (Pl.'s Ex. M.) The report contains notes from Onick's interview with Dougherty about the incident. In the investigation report and the affidavit of probable cause, Onick describes that Pugh threatened Dougherty that he was "going to fucking kill him." (Pl.'s Ex. L.) The investigation and affidavit also explain that Pugh attacked Dougherty and "slam[med] Dougherty to the ground." Id. The report indicates that Onick also independently observed the incident. However, because Dougherty is listed as the "victim" and the affidavit relies on complaints listed in the investigation report, it may be reasonable to infer that Dougherty requested or directed Onick to initiate the proceedings against Pugh. Thus, if Dougherty

---

[7] The parties dispute Pugh's statement to Dougherty that was claimed to have led to Pugh's arrest. Plaintiff states that he told Dougherty: "Why don't you fuck with someone else." Onick states that Pugh said, "I'm going to fucking kill you." (Def.'s Mot. at n.11.)

10

knew this information to be false (i.e. that Pugh did not truly make terroristic threats and attack him), Plaintiff may establish that Dougherty "instituted proceedings" against the Pugh without probable cause and with malice.

Under these circumstances, there are genuine issues of material fact as to whether Dougherty requested that Onick institute proceedings against Pugh and whether Dougherty knew his criminal complaints against Pugh to be false. Therefore, Defendants' motion for summary judgment as to the malicious prosecution claim will be denied.

### 3. Punitive damages

Defendants argue that Plaintiff cannot recover punitive damages, as he cannot prove that "controlling a man resisting arrest can be malicious conduct." Defendants again rely on the Video to argue, "the video clearly shows that Pugh turned around and physically went after Dougherty[.]" (Defs.' Mot. at unnumbered 15.)

Under Pennsylvania law, punitive damages are appropriately awarded when a defendant's conduct is outrageous due to evil motive or reckless indifference to the rights of others. Phillips v. Cricket Lighters (Phillips II), 883 A.2d 439, 445 (Pa. 2005). Plaintiff's burden is ultimately to "adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to

11

'intentional, willful, wanton or reckless conduct. . . .'" Id. at 446 (quoting SHV Coal, Inc. v. Cont'l Grain Co., 587 A.2d 702, 704 (Pa. 1991)).

Punitive damages are an extreme remedy that should be applied sparingly and only in the most exceptional matters. Jeanette Paper Co. v. Longview Fibre Co., 548 A.2d 319, 327 (Pa. Super. Ct. 1988). Furthermore, "because punitive damages are intended to punish the tortfeasor for outrageous conduct and to deter him and others like him from similar conduct in the future, [t]he state of mind of the actor is vital." Snead v. SPCA of Pa., 929 A.2d 1169, 1184 (Pa. Super. Ct. 2007) (quoting Hutchinson ex rel. Hutchinson v. Luddy, 896 A.2d 1260, 1265 (Pa. Super. Ct. 2006)).

For the reasons previously discussed, the Video is not definitively "clear" that Pugh was attempting to attack Dougherty. There are genuine issues of material fact as to whether Pugh was the initial aggressor and whether Dougherty was simply acting in self-defense. Plaintiff has introduced evidence that may support the finding that: (1) Dougherty committed an assault and battery against him; (2) Dougherty maliciously prosecuted him by providing a knowingly false report to Onick and later testified to this false report at a trial where Pugh was found not guilty. Accordingly, in the light most favorable to Plaintiff, Plaintiff has pointed to sufficient evidence in the

record from which a reasonable jury could find that Dougherty's conduct was malicious and egregious. As such, the Court will deny Defendants' motion for summary judgment as to Plaintiff's claim for punitive damages.

### 4. Intentional Infliction of Emotional Distress

Plaintiff has voluntarily withdrawn his intentional infliction of emotional distress claim against Dougherty. (Pl.'s Resp. at 18.) Accordingly, the Court will grant summary judgment on this claim.

### 5. Attorney's Fees

Plaintiff agrees with Defendants that he cannot recover attorney's fees against Defendants Dougherty and Chester Downs, as there are no pending claims against the moving defendants under the Civil Rights Act. (Id.) Accordingly, Plaintiff cannot recover attorney fees from moving Defendants.

### 6. Claims against Trooper Onick

Trooper Onick has not moved for summary judgment. Consequently, Plaintiff's § 1983 claims, as to Defendant Onick, alleging false arrest/imprisonment, excessive force, and malicious prosecution [Counts II, III, and IV] remain.

## V. CONCLUSION

For the reasons discussed above, the Court will grant Defendants' motion for summary judgment in part and deny it in part. The motion will be granted as to Plaintiff's intentional

infliction of emotional distress claim and any claim for attorney's fees.  The motion will be denied as to the battery, malicious prosecution and punitive damages claims.  An appropriate order follows.